May it please the Court, Elizabeth Daly on behalf of the Appellant Crescencio Mendoza Carrion. I've heard this Court's admonishments to watch my clock. I will do that and I have the goal of preserving three minutes of my time for rebuttal. In 2014, when Mr. Mendoza told the immigration judge that he feared harm in Mexico, that statement triggered a with the legal knowledge necessary to make an informed decision whether to seek deferral of removal. The immigration judge's colloquy fell short of satisfying those obligations and rules in at least five ways. First, the immigration judge failed to comply with any of the three prongs of what I'm going to call the Asylum Advice Regulation, which is Section 1240.11c1. That regulation applies whenever a non-citizen expresses a fear of harm in removal proceedings. And in this case, the immigration judge did not advise Mr. Mendoza that he had a right to apply for asylum and withholding of removal, did not make the application form available, and did not advise Mr. Mendoza regarding the privilege of representation by counsel in asylum proceedings. Outside of that particular regulation, the immigration judge also failed to provide meaningful advice about Mr. Mendoza's potential eligibility for deferral and failed to fully develop the record by explaining to Mr. Mendoza what he would have been required to prove to receive that relief. Any one of these failures to comply with the regulations and due process obligations would be sufficient to establish a due process violation, but together they're especially harmful when viewed in their aggregate effect. I'm mindful of this court's long docket and the court's time. I'm happy to jump to any particular part of our challenge that the court is interested in, but absent other direction, I plan to start with the government's argument that the Asylum Advice Regulation does not apply, which we view as inconsistent with the plain meaning and this court's precedent and the Board of Immigration Appeals precedent on that regulation. Counsel, is it true that your client declined the opportunity to seek asylum? Yes, Your Honor. He was asked, do you wish to apply? And the answer to that was no. Well, then was the asylum regulation triggered in light of the fact that he declined the opportunity to seek asylum? Yes, Your Honor, I was. The asylum regulation has exactly one criteria to trigger its application, which is the expressed fear of persecution or harm upon return. That's how this court interpreted in Zamorano v. Garland, Valencia v. Mukasey, and that's how the Board of Immigration applies one thing, an expressed fear of harm or removal. Now, I understand that Mr. Mendoza was asked, do you wish to apply? We view that as putting the cart before the horse. It's a skip to the end way of getting through the proceedings. These are protective... So, counsel, is it your position that even before each one of the detainees is asked whether they want to seek asylum, they have to be given the asylum application and explained and given an explanation of it beforehand? Is that your view? It's similar to that, Your Argument. It's that each of the three prongs of the asylum advice regulation applies. It says to make the form available, and that could mean advising the person that it's available to them, having it, you know, present where they are, telling them where it will be or that it will be made available. There's a number of different ways that that could be complied with, and it's also the advice to the alien that they have a right to apply, and it's also the asylum-specific advice about counsel. There's no exception in these cases. I guess the way I would frame it, Your Honor, is that the court can't go to the end and say, do you want to exercise a right without first advising the person that they have that right? And that's clear from this court's precedent discussing the difference between meaningful advice and a genuine opportunity to apply. Are you taking the position that your client was never advised that he had the right to seek asylum? Yes, Your Honor, that's right. He was not advised you have the right to apply for asylum and withholding of removal. And as far as what triggers that requirement of advisement, does it have to be—does the defendant, in this case the defendant, Mr. Mendoza, have to say that he has a recognized fear that would trigger protection under asylum? Your client said that he was fearful because he had lost a drug load, but that wouldn't necessarily trigger the asylum protection. And so under those circumstances, does the judge still have to advise? Yes, Your Honor. The Seventh Circuit addressed exactly this point in Jimenez-Aguilar v. Barr. In that case, they asked, what does it mean to express a fear of harm or persecution? And they said that what it means is a very preliminary assessment that the person has expressed a fear of harm or persecution of the type that could trigger one of these fear-based forms of relief. So, by contrast, if somebody says, I'm afraid of falling off a bicycle, I'm afraid of being caught in a hurricane, those types of fears are fears of harm, physical harm, but they are not the type that would trigger the regulation. But I don't think at the preliminary advice required stage, there's also an assessment of eligibility because the agency expressly declined to keep that from the regulation. Any assessment that the person would be granted asylum or would be granted withholding of removal is not required to trigger the protective regulations. Because, again, these are regulations that are supposed to help an individual make that decision whether to apply. And if they're first asked, do you want to apply, then they have to make that decision without these three pieces of advice, as well as the immigration judge's obligation to fully develop the record and to advise of apparent eligibility for relief. Counsel, you rely on a Seventh Circuit decision. Of course, that's not binding on us. Do you have a Ninth Circuit decision that similarly says that the regulation is triggered under the facts of this case? The two cases from this court that I'm relying on are Zamorano and Valencia v. Mukasey. In Zamorano, they said an expressed fear of harm would have triggered Section 1240.11. The only reason it wasn't triggered in that case is because his only fear was that he wouldn't know how to start a new life. And that's not a fear of physical harm. It's not anywhere near the type of harm that would implicate a fear-based form of relief. In this case, Mr. Mendoza said that he feared drug cartel retaliation, as Judge Zips noted that he was worried because they wanted the drugs back or to be paid for them. And that is the type of fear that would indeed trigger potential eligibility for asylum, withholding of removal, or Convention Against Torture relief for deferral of removal if he had categorical bars for the first two types of relief. I also wanted to compare, in this case, the question, do you want to apply versus do you wish to remain silent? Do you wish to be represented by counsel? It would be a novel holding of this court to say that asking the question whether you wish to exercise a right is the same thing as advising somebody that they have a right. The court addressed a very similar circumstance in Ubaldo Figueroa regarding the right to appeal. And in that case, it was a question to the respondent's counsel, are you planning to accept this as final? In other words, are you appealing? And counsel said no. And in that case, they said, an alien cannot make a valid waiver of his right to appeal if an IJ does not expressly and personally inform the alien that he has the right to appeal. So in that case, the question to counsel was not sufficient to satisfy the advice of rights. Here it's the advice of right to apply, the advice of right to be represented specifically by counsel, which is separate from the counsel right in removal hearings, as well as making the application form available. And these are each potential barriers. The regulation exists to make sure that a decision not to apply is not based mistakenly on a belief about one of those barriers. Counsel, didn't the immigration judge explain that asylum, withholding, or deferral of removal could allow your client to remain in the United States? Yes, Your Honor, that's exactly right. Why isn't that sufficient advisement? That explains the end result. But it doesn't get to an advice of right to apply, it doesn't get to advice of the right to be represented by counsel, and it doesn't make that application form available. I think what's really pertinent to that particular advice is this court's case law about an immigration judge's obligation to fully develop the record. In that context, what the court has said is that there has to be explanation of what the person would be required to prove to establish their basis for relief. And so this bare statement that it may allow you to remain in the United States doesn't say what those forms of relief are, who might qualify that for them, or how you would go about getting them. And that's what's missing here. Your Honors, I believe that I'd like to use the rest of my time to discuss the procedural aspects of 1326D and the Supreme Court's ruling in Palomar-Santiago, unless the court has further questions about the actual due process violation. Right. So we're looking at this not whether or not the regulation was violated per se, but whether or not it's a due process violation, which is a different inquiry. Correct? That is correct. However, I would point the court to the decision in Raya Vaca, which says that a violation of a regulation intended to protect advice about eligibility for relief or intended to protect the right to counsel is a due process violation, because those regulations are intended to protect fundamental rights. There's also the Andreacian ruling from this court that we cited in our briefs that says failure to advise an individual of their right to apply for asylum or their right to counsel in asylum proceedings is a violation of the constitutional right to due process. Right, but the due process right is not contiguous with the regulation. So a violation of the regulation does not necessarily rise to the level of a due process violation under our law. I read Raya Vaca as saying something different than that. But either way, when there's an absence of advice about the right to apply and the privilege of being represented by counsel in asylum proceedings, then I don't think there's a need to quibble. And again, we've got five violations of the regulations of the immigration judges, clearly stated obligation that this court has upheld multiple times, most recently in Zamorano of the obligation to fully develop the record. All of those defaults, all of those failures, looking at them as a whole, was Mr. Mendoza improperly advised about his right to seek relief, his right to counsel in those asylum proceedings, and did the immigration judge fail to fully develop the record so that Mr. Mendoza could make an informed decision? We believe that there is a clear due process violation on this record. Specifically, I want to ask you, is there a Ninth Circuit decision that says failure to comply with this regulation per se constitutes a due process violation? No. All right. What we have is RIAVACA, which says violations of regulations about advising non-citizens of their eligibility for relief, which this would be. Well, not necessarily. In those cases, there was a complete absence of advisement about eligibility for asylum. We don't have that here. So you're extrapolating from the language in that case to say that any violation of the regulation is a due process violation. I'm not sure that that is an accurate interpretation of those cases. I understand the Court's point. What I would say about that is that the regulations set the agency's own view of what's required, what is necessary in order for a person to make an informed decision about applying for these forms of relief. With the Court's permission, I'd like to see if I can reserve the remainder of my time. For planning purposes, we'll increase your time to two minutes for rebuttal. There's 40 seconds on it, so you've got two minutes now. We'll turn to Ms. Barr, please. Thank you, Your Honor. May it please the Court, Sarah Barr appearing on behalf of the United States. This Court should affirm the District Court's denial of the defendant's motion to dismiss his indictment because the defendant has not established that he exhausted his administrative remedies as required under 1326 D.1. This case is controlled by de la Morrocobian, which the government cited in its 28J letter, and that forecloses the defendant's collateral attack. De la Morrocobian says that a waiver of appeal is valid when an alien chooses to waive that appeal after being informed of the right to appeal and of the consequences of failing to appeal. Here, the defendant does not argue that the immigration judge did not advise him of his right to appeal and does not argue that the immigration judge failed to advise him of the consequences of waiving that right. And in fact, there is an extensive appellate colloquy between the immigration judge and the defendant at ER 315, which establishes these facts. De la Morrocobian says that administrative exhaustion requires an alien to appeal any issue that could administratively remedy the removal order. We know that the very due process claims, all of them, raised by defendant in this case, they are appealable issues. Now, the defendant chose not to appeal, but we know that they are appealable issues because other aliens have appealed them. The alien in Zamorano directly appealed to the Board of Immigration Appeals and raised the exact same due process claim raised in this case. Vasquez v. Holder was a direct appeal of the very issue. The nature of the errors here, the alleged due process errors in this case, did not affect the defendant's understanding of, knowledge of, or ability to pursue an appeal. He simply chose not to. That is a failure of the mandatory requirement that he exhausts his administrative remedies. It was mandatory before Palomar-Santiago, and Palomar-Santiago makes it abundantly clear that it is mandatory now. It cannot be excused. That is dispositive of this claim. The court need not consider any other issue raised by the defendant because his failure to exhaust his remedies dooms the collateral attack. Now, I'm happy to answer any questions. I understand from my colleague that she has reserved her opportunity to address Palomar-Santiago, so I have no response necessarily as to that unless Your Honors have a question, and I would submit on the briefs otherwise. Well, Counsel, on the merits, what's your response to opposing counsel's position that a failure to comply with the regulations constituted due process, a violation of due process? Your Honor, I think that you were correct when you noted that a failure to comply with a regulation does not necessarily constitute a violation of due process. I would note that the case relied on by my opposing counsel, Ray Avaca, has been overturned by the Supreme Court. So I don't know and I don't believe that this court's case law supports the proposition that a violation of that regulation is per se a due process violation, particularly where, as here, we have the facts where the immigration judge did ask the defendant about his fear. He asked him about his fear, and then he asked him if he wished to apply for asylum, immediately following up on the defendant's response that, yes, he had a fear. And not only did he ask him if he wished to apply for asylum, he asked him if he understood that asylum would allow him to remain in the United States. And the defendant said, yes, Your Honor, I understand, and I don't want to file it. I think Zamorano is also useful here because I think an important takeaway from Zamorano is that there is a point, even under this regulation, where the immigration judge's constitutional obligation to provide asylum advisals ends. And in Zamorano, that ended after the immigration judge asked him about the fear, and the alien provided a response that was a non-qualifying fear. The judge didn't have to proceed with the remainder of the regulations. Here, the immigration judge asked about the fear, and when he received a response that maybe was qualifying, he asked the defendant if he wanted to apply, and he ensured the defendant's knowledge and understanding that applying might allow him to remain. When the defendant said, no, Your Honor, I don't want to apply. I fully understand, but I don't want to apply. His constitutional obligation to proceed with any continued asylum advisal was over. And I would like to address opposing counsel's point on this matter, about this court's case law regarding fully developing the record. Zamorano expressly rejected the notion that the case law referred to by counsel, those are the cases of Aguiman and Jacinto, apply in the context of the initial relief colloquy to determine eligibility. Those cases involved very different fact scenarios in which the aliens were at their final hearing. They had already applied for asylum. They were at their final hearing, and the immigration judges engaged in extraordinarily obstructionist behavior that prevented them from making the claim that they had already applied for. That doesn't apply here. Zamorano does not say that it applies here. And no other case says that it applies here, where the defendant declines to pursue the relief offered by the immigration judge. If there are no further questions, then I would submit on the briefs, but I'm happy to answer any more questions. Thank you. Yeah. I have no questions. Judge Rawlinson? No. Judge Sips? No, thank you. We have none in this case now. We'll return to Ms. Daly for two minutes or for a bow. Thank you, Your Honor. I want to try to make four points. First, I'd like to amend my response to Judge Rawlinson's question. I believe this court has held that a violation of this regulation violates constitutional due process in Andreassian. I hesitated at first because that case involved what I believe is the predecessor to this particular regulation, but I meant Andreassian, which is 180 F. 3rd, 1033, page 1041. It's a Ninth Circuit decision reported in 1999, and it says, quote, failing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process. But that's not what we have here. There was not a failure to advise of the right to asylum. He was explicitly told that he might have a right to asylum. I disagree with what the record shows. Asking somebody if they wish to remain silent is not the same thing as telling them that they have a right. And I think this court— The I.J. said you may have a right to asylum and withholding of removal. Well, maybe I'm wrong on the record, but that was my recollection that he was told. What I recall from the record of the immigration judge colloquy, if it had said what Your Honor is saying, we would be in a very difficult position. What the judge said is do you wish to apply? No. These forms of relief may allow you to remain in the United States. Right. That's advising him. Not you have a right to apply. Exactly. That's advising him of the existence of those avenues of relief. How is that not advising him of the existence of those avenues of relief? I think it's similar saying if you remain silent, you won't have said anything. All right. It's kind of a nonstarter as far as you have the right to apply. And more importantly, or equally importantly perhaps, you have the right to counsel. That was one of my four points I see that I have gone into, gone over my time that the court generously allowed. Would you address exhaustion? Yes, Your Honor. The government's argument here squarely conflicts with the Supreme Court's holding in Mendoza-Lopez. In Mendoza-Lopez, the court held, sorry, I'm on the wrong page, the violation of respondents' rights that took place in this case, which was a failure to properly advise them of their eligibility for relief, amounted to a complete deprivation of judicial review. When an error like that occurs, Mendoza-Lopez holds that there is a constitutional right of collateral attack. Palomar-Santiago did not address that. This court's binding case law has always interpreted Mendoza-Lopez in that way. That's why we have cases like Arrieta and Ubaldo-Figueroa. They're very specific, and they're not clearly irreconcilable with Palomar-Santiago because Palomar-Santiago was a narrow holding that explicitly carved out the invalid appeal waiver issue. I think that concludes Ms. Daley's argument. But I want to add one more thing. This is for Ms. Barr. The Palomar-Santiago argument at the end shifted and asked the question whether there was a due process violation from violating the regulation. And initially, I think Palomar-Santiago said no on that. Then on rebuttal, she said yes, that she altered that. So my question for Ms. Barr is, since you didn't have a chance to respond to that in your initial opposition argument, do you want to make a 30-second response to that right now? Yes, Your Honor. Thank you very much for your generosity. My response is that I'm not familiar with that case, but ultimately it does not matter. Even if there was a due process violation in this case, the defendant did not exhaust his administrative remedies, and he was not deprived of judicial review. I would note that the Mendoza-Lopez case predates 1326D, and Palomar-Santiago states explicitly that the controlling framework for a collateral attack is 1326D. It is not Mendoza-Lopez. It cited Mendoza-Lopez only for its position in the historical development of collateral attack case law. But the binding, controlling framework is 1326D, and the defendant, even if he suffered a due process violation, has not met all of the requirements. Thank you, Ms. Barr. Now, I want to say, Ms. Daly, I'll permit you, if you want, a 15-second response, because usually we let the appellant have the last word. I will always take the opportunity to have the final word. Your Honor, my response to that would be that the statute can't trump the Constitution. Mendoza-Lopez is a constitutional ruling. It's at the floor for what's constitutionally required when you have an administrative ruling be an element of a criminal offense. So I don't think that 1326D trumps it. Thank you. Well, I think we can now say that, although I may have erred in presiding by going back and forth, that we can now consider this argument. Well, no one can reverse you. Conclude. That's reassuring to hear. We'll consider this argument concluded, except that I do want to say what I said at the outset, that the Court really appreciates the advocacy of each of you on your clients' positions, and that it's a big help to us. And we will now submit this case, and the parties will hear from us in due course. So thanks again. The Court is now adjourned for the day until tomorrow morning.
judges: GOULD, RAWLINSON, Zipps